# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **A.B.**, | Case No. 3:23-cv-00388-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFENDANT INTERSTATE MANAGEMENT COMPANY, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| **INTERSTATE MANAGEMENT COMPANY, LLC**, | |
| Defendant. | |

Susanna Southworth, Restore the Child, PLLC, 2522 North Proctor Street, Suite 85, Tacoma, WA 98406. Joel Shapiro, Law Office of Joel Shapiro, LLC, 1420 NW Lovejoy St, Suite 631, Portland, OR 97209. Kathryn L Avila, Nigh Goldenberg Raso & Vaughn, 14 Ridge Square NW, Third Floor, Washington, DC 20016. Attorneys for Plaintiff.

Francis Torrence and Meryl Hulteng, Lewis Brisbois Bisgaard & Smith LLP, 888 SW Fifth Avenue, Suite 900, Portland, OR 97204-2025. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Defendant Interstate Management Company, LLC, moves under Federal Rule of Civil

Procedure 12(c) for judgment on the pleadings against Plaintiff A.B.'s single remaining

beneficiary liability claim brought under the Trafficking Victims Protection Reauthorization Act

("TVPRA"), 18 U.S.C. § 1595. Defendant's Motion for Judgment on the Pleadings ("Mot."),

PAGE 1 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

ECF 59. Defendant argues that it is entitled to judgment on Plaintiff's TVPRA claim because Plaintiff's First Amended Complaint ("Am. Compl."), ECF 36, does not contain sufficient allegations that Defendant knowingly participated in the sex trafficking venture that Plaintiff alleges took place at the Residence Inn hotel in 2012 and 2013. This Court held oral argument on the Motion on August 13, 2024. ECF 68.

As explained below, this Court concludes that although Plaintiff has sufficiently pleaded that Defendant participated in a commercial sex venture involving Plaintiff, Plaintiff has failed to sufficiently plead that Defendant knew or should have known that the commercial sex venture involved the use of force, threat of force, fraud, coercion, or a combination thereof to cause Plaintiff to engage in commercial sex acts. Defendant's Motion is GRANTED, but this Court exercises its discretion to dismiss Plaintiff's TVPRA claim, rather than grant judgment to Defendant, and to allow Plaintiff leave to amend.

## LEGAL STANDARDS

"A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *United States v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016) (quoting *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)). When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, as it is here, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not

PAGE 2 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

Courts have discretion to grant dismissal on a 12(c) motion, in lieu of judgment, on any given claim. *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007).

## BACKGROUND

### A.  Plaintiff's Trafficking at the Residence Inn

Plaintiff alleges that, "[f]rom approximately September 2012 through March 2013," she was "repeatedly subjugated to sex trafficking at the Residence Inn." Am. Compl., ECF 36 ¶ 49.

Defendant Interstate Management is a hospitality company and contracted with the Residence Inn hotel owner, Summit Hotel TRS 085, LLC, to manage, operate, supervise, and conduct business as the Residence Inn. *Id.* ¶ 16. Defendant Interstate Management directly offered public lodging services at the Residence Inn. *Id.*

While at the Residence Inn, Plaintiff was sold by her trafficker to at least seven "clients"—otherwise referred to as "buyers"—per night. *Id.* ¶ 52. Plaintiff's trafficker would intermittently rent rooms from one to four nights at a time. *Id.* ¶ 53. Plaintiff "would generally be placed at the Residence Inn" up to "two times in the same month," or six to twelve stays over four to five months. *Id.* Plaintiff recalls she was trafficked at the Residence Inn from February 28, 2013 through March 2, 2013; March 11, 2013 through March 12, 2013; and March 19, 2013 through March 21, 2013. *Id.*

Plaintiff alleges that her trafficker always booked the rooms directly from the front desk and used a Residence Inn employee's ("Residence Inn Employee A") discount card. *Id.* ¶ 54. She alleges that the discount card belonged to a housekeeper. *Id.* The trafficker would pay for the room using a debit card or cash and the employee discount code. *Id.*

Plaintiff further alleges that Residence Inn Employee A was an acquaintance of the trafficker—Residence Inn Employee A's fiancé was friends with the trafficker—and that Residence Inn Employee A initiated contact with the trafficker to "rent a room" for him. *Id.* ¶ 55. Residence Inn Employee A told police that "she purposely changed the name on the personal reservation to the trafficker's name after initially reserving it under her name." *Id.* ¶ 56. Residence Inn Employee A "received cash from the trafficker as a 'thank you' for renting the room to him." *Id.* Residence Inn Employee A interacted with the trafficker on Facebook messaging and on the hotel premises. *Id.* ¶ 57. Plaintiff interacted with Residence Inn Employee

A on Facebook messaging. *Id.* Plaintiff states that Residence Inn Employee A facilitated a reduced rate room rental for her trafficker on at least three separate occasions at the Residence Inn, and that the trafficker used Residence Inn Employee A's discount code to rent rooms at other Residence Inns. *Id.* ¶ 58. Plaintiff also alleges that the use of the employee discount code would have been cataloged on the hotel's central reservation system. *Id.*

After booking the room, Plaintiff's trafficker would get two keys and take one key to Plaintiff, who would be waiting in the car. *Id.* ¶ 59. Plaintiff would walk to the hotel room by herself, without having registered as a guest. *Id.* The "buyers" were not required to register as guests with the hotel or provide their vehicle information. *Id.* ¶ 63. While Plaintiff was with "buyers," Plaintiff's trafficker used hotel wi-fi to post advertisements of Plaintiff's services on adult websites, set up future "dates" for Plaintiff with "buyers," and record Plaintiff's sexual acts. *Id.* ¶¶ 59–60, 63. Plaintiff alleges that such recordings would have signaled large amounts of data usage identifiable to the hotel. *Id.* ¶ 61.

Plaintiff alleges that during the seven-month period during which she was trafficked, there were "obvious signs" of Plaintiff being sex trafficked at the Residence Inn. *Id.* ¶¶ 69–70, 88. These signs of sex trafficking included Plaintiff's lack of eye contact, the frequency and length of her stays, the rental of a room with cash or debit by a man for a woman who did not enter the hotel at the same time, and consistent foot traffic to and from Plaintiff's room. *Id.* ¶ 70. In addition, Plaintiff's room exhibited signs of commercial sex work: used condoms in the trash, bottles of lubricants, boxes of condoms, and excessive requests for towels and linens. *Id.* Plaintiff encountered the same hotel staff over the course of the time she was trafficked on the property. *Id.* ¶ 68. The foot traffic to the rooms in which Plaintiff was trafficked was "constant and voluminous." *Id.* ¶ 63.

Plaintiff further alleges that she and another victim were sometimes forced to share the room. *Id.* ¶ 64. The two would alternate in and out of the room, with one using the room for meeting a "client" while the other would remain on the hotel property, in plain view of hotel staff through the day or night. *Id.*

## B. Defendant's Alleged Knowledge of Sex Trafficking

In her Amended Complaint, Plaintiff highlights the intersection of the sex trafficking and hotel industries, asserting that hotels play a "crucial role in the sex trade" by offering anonymity and non-traceability to those involved in sex trafficking. *Id.* ¶ 76. As a result, Plaintiff alleges that, in addition to implementing anti-trafficking policies, "[t]raining hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for Defendant[]." *Id.* ¶¶ 75, 86, 89. Plaintiff alleges that Defendant, as a hotel operator, has been "cognizant of [its] role and responsibilities in the sex trafficking industry for years." *Id.* ¶ 93.

Plaintiff further alleges that Defendant was apprised of instances of sex trafficking at the Residence Inn. *Id.* ¶ 101. Leading up to the trafficker's and Plaintiff's arrest on or about March 19, 2013, the hotel staff had notice of criminal activity involving sexual crimes occurring on the property due to the Portland Police Bureau having logged reports of such criminal activity on December 22, 2009, and June 25, 2012. *Id.* ¶ 66. Plaintiff also references three online reviews of the hotel ranging from 2017 to 2022, which describe a gang shooting outside a guest's room, lack of cleanliness, evidence of drug use, and general criminal activity. *Id.* ¶ 102. Plaintiff asserts that "online reviews similar to those outlined above provided Defendant with actual and/or constructive knowledge of sex trafficking, commercial sex, forced prostitution, and the foreseeable risk of sex trafficking at the Residence Inn." *Id.* ¶ 103.

**DISCUSSION**

Defendant moves for judgment on the pleadings, arguing that Plaintiff has failed to state a claim for relief under the TVPRA because she has not sufficiently alleged facts to plead the participation and knowledge elements of her TVPRA claim. Mot., ECF 59 at 8–16.[1]

The TVPRA provides a private right of civil action for victims of sex trafficking. *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011). Section 1591 of the TVPRA defines sex trafficking as commercial sex activity either involving a minor[2] or where "force, threats of force, fraud, coercion . . . , or any combination of such means [is] used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a). In outlining the private right of civil action for victims, § 1595 provides that victims

> may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney fees.

---

[1] Defendant also moves for judgment on Plaintiff's Amended Complaint—at least in part—on statute of limitations grounds. *See id.* at 16–17; Defendant's Reply, ECF 64 at 8–10. Because this Court finds that Plaintiff has failed to plead sufficiently Defendant's actual or constructive knowledge of the sex trafficking venture as required under the TVPRA, this Court need not consider whether Plaintiff's TVPRA claim is time-barred. This Court notes, however, that Plaintiff has pleaded some allegations that fall within the TVPRA's ten-year statute of limitations, as measured from the date on which she filed her initial Complaint in this case. *See Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-CV-056, 2023 WL 4424725, at *10 (D.N.D. May 22, 2023); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020).

[2] Plaintiff does not allege or argue that she was a minor when she was trafficked at the Residence Inn, nor that she appeared age-inappropriate. Because TVPRA claims involving minors do *not* require that the defendant had actual or constructive knowledge of force, threats of force, fraud, coercion, or any combination thereof, this Court refrains from relying on authority involving minors for this Opinion.

18 U.S.C. § 1595(a). The statute affords a civil remedy both against individuals who directly

perpetrate trafficking and against individuals who financially benefit from participation in the

trafficking venture. *See Ditullio*, 662 F.3d at 1094 n.1. As a remedial statute, courts construe the

TVPRA liberally. *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1024 (D. Or.

2021).

Plaintiff brings a direct liability claim against Defendant under a financial beneficiary

theory. To state a financial beneficiary claim under § 1595(a), Plaintiff must allege facts from

which this Court can reasonably infer that Defendant (1) knowingly benefited financially

(2) from "participation in [a] venture" (3) that Defendant "knew or should have known" has

"engaged in" sex trafficking as defined in 18 U.S.C. § 1591. *G.G. v. Salesforce.com, Inc.*, 76

F.4th 544, 553 (7th Cir. 2023); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021);

*J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal.

Oct. 28, 2020). Defendant does not dispute the first element, that it knowingly benefited

financially.[3] Instead, Defendant argues that Plaintiff fails to plead sufficiently that Defendant

participated in the venture or knew or should have known of its participation in the venture

engaged in sex trafficking.

Before addressing Defendant's two arguments, this Court notes that, viewing the well-

pleaded allegations in Plaintiff's favor, Plaintiff has established that she was a victim of an

underlying TVPRA violation. Based on the Amended Complaint, this Court does not question

---

[3] Nor could Defendant dispute the first element. As this Court has previously held, a
plaintiff's allegations that "[the defendants] benefited from [the plaintiff's] trafficking each time
they received royalty payment for rooms in which [the plaintiff] was being kept" are "sufficient
to meet the 'knowingly benefits' element" at this stage. *A.B. v. Hilton Worldwide Holdings Inc.*,
484 F. Supp. 3d 921, 936 (D. Or. 2020). This Court finds that Plaintiff alleges sufficient facts
that Defendant "knowingly benefitted" financially under the TVPRA.

that Plaintiff's trafficker used force, threats of force, fraud, or coercion to cause Plaintiff to perform commercial sex acts against her will. The following discussion addresses a different question: Does Plaintiff's Amended Complaint contain sufficient allegations to hold Defendant civilly liable for its knowing participation in this trafficking venture?

## A.  Participation in the Venture

Defendant moves for judgment on Plaintiff's TVPRA claim, arguing that Plaintiff has failed to sufficiently plead that Defendant "participated in a venture" that was engaged in sex trafficking. Mot., ECF 59 at 9–12. "[T]he phrase 'participation in a venture' requires [a plaintiff to] allege that the [defendant] took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 725; *see also J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *4 (E.D. Cal. Oct. 18, 2022). To satisfy the "participation" element of a civil TVPRA claim, Plaintiff need not allege that Defendant had actual knowledge of a venture engaged in trafficking by "force, threats of force, fraud, [or] coercion" or that Defendant performed an overt act in furtherance of the venture. *A.B.*, 532 F. Supp. 3d at 1024–25; *see* 18 U.S.C. § 1591(a). "In the absence of direct association with traffickers," however, "Plaintiff must 'allege at least a showing of a continuous business relationship between the trafficker and [Defendant] such that it would appear that the trafficker and [Defendant] have established a pattern of conduct or could be said to have a tacit agreement.'" *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (citations omitted). "Where the [defendant] provides assistance, support, or facilitation to the trafficker through such a 'continuous business relationship,' a court or jury may infer that the [defendant] and trafficker have a 'tacit agreement' that is sufficient for 'participation' under [§] 1595." *G.G.*, 76 F.4th at 559 (citations omitted).

Courts have found that when employees assist traffickers by, for instance, serving as lookouts and warning traffickers about guest complaints, those allegations satisfy the participation element of a TVPRA beneficiary claim at the motion to dismiss stage. *See, e.g.*, *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1236 (N.D. Ga. 2022) ("[E]mployees, agents, and/or representatives assisted those who trafficked [p]laintiff by acting as lookouts for [p]laintiff's traffickers and informing the traffickers of police activity at the hotel as well as warning [p]laintiff's traffickers about guest complaints . . . . These allegations directly link specific conduct of [defendant's] employees to the advancement of the sex trafficking operation and, as such, are sufficient to satisfy the second element of the TVPRA beneficiary claim."); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *3 (N.D. Ga. Aug. 30, 2023) (finding that allegations that hotel employees zip-tied the strike bar on a door so it would not lock for those wishing to buy commercial sex from the trafficker were enough to amount to a "tacit agreement" for the participation element of a TVPRA claim).

Here, Plaintiff's allegations about the involvement of Residence Inn Employee A suffice for the participation element against Defendant, Residence Inn's operator. The Amended Complaint alleges that Residence Inn Employee A allowed Plaintiff's trafficker to use her discount code; Residence Inn Employee A received money in exchange for allowing the trafficker to use the discount code; Residence Inn Employee A shared with the police that she chose to replace her name on the reservation with the trafficker's name; Residence Inn Employee A communicated online with both the trafficker and Plaintiff; and Residence Inn Employee A's fiancé was friends with the trafficker. Taken together, particularly in light of the unique personal relationship between Residence Inn Employee A and the trafficker, these facts support a reasonable inference that Residence Inn Employee A was at least tacitly participating in an

enterprise involving commercial sex. At this stage in the proceeding, these facts are sufficient to state a claim that Residence Inn Employee A was at least tacitly participating in an enterprise involving commercial sex.

## B. Actual or Constructive Knowledge of the Venture

As noted above, for an adult victim to state a civil beneficiary liability claim under the TVPRA, that victim must allege that the defendant knew or should have known the trafficker used means of force, threats of force, fraud, coercion, or any combination of such means to cause the victim to engage in a commercial sex act.

Defendant argues that "[t]here are no allegations whatsoever that any employees knew or should have known that Plaintiff was required to perform commercial sex acts under force, fraud, or coercion as opposed to her willingly and voluntarily engaging in commercial sex for her own profit." Reply, ECF 64 at 7. Plaintiff responds that "[t]he close relationship between the hotel employee's fiancé with the trafficker" means "it is likely that the fiancé knew of the venture involving sex trafficking by force, fraud, or coercion of the Plaintiff," which "makes it plausible that the hotel employee also knew or had constructive knowledge that Plaintiff was being sex trafficked on the premises by force, fraud, or coercion." Resp., ECF 63 at 15.

As this Court has explained, for beneficiary liability under the TVPRA, it is not enough for a complaint to establish that a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property. *See A.B.*, 532 F. Supp. 3d at 1027. Instead, a complaint must establish that a defendant knew or should have known of a venture involving sex trafficking by force, threat of force, fraud, or coercion, or a combination thereof. District courts have generally dismissed TVPRA beneficiary liability claims because the complaint failed to allege certain overt indicia or demonstrative allegations going to defendant's

knowledge of sex trafficking in violation of the TVPRA.[4] And, reviewing the cases in which district courts have found that the complaint sufficiently alleged facts going to the defendant's knowledge, certain allegations recur: the plaintiff displayed visible signs of abuse, like bruising, or physical deterioration, like malnourishment; the trafficker overtly exerted control over the plaintiff in public areas of the hotel; screaming could be heard from the plaintiff's hotel room; or the trafficker or others physically assaulted the plaintiff in public areas of the hotel.[5]

---

[4] *See, e.g.*, *Doe (L.M.) v. 42 Hotel Raleigh, LLC,* No. 5:23-CV-235-FL, __ F. Supp. 3d __, __–__, 2024 WL 631482, at *5–8 (E.D.N.C. Feb. 13, 2024) (discussing the distinction between constructive knowledge of prostitution and knowledge of sex trafficking by force or fraud for a TVPRA beneficiary liability claim and noting that "[c]onspicuously absent from plaintiff's complaint are any allegations that could plausibly produce an inference of trafficking by force or fraud such as, for example, signs of physical abuse, actual assaults by a trafficker on the victim, lack of money or identification, or any of the sufficient allegations indicating force or fraud made in any of the" collected cases); *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390, at *6–7 (W.D. Wash. Sept. 13, 2023) (granting defendant's motion to dismiss plaintiff's TVPRA beneficiary liability claim because the complaint failed to allege sufficient facts going to the knowledge element—nothing that the plaintiff had pleaded was inconsistent with voluntary commercial sex activity).

[5] *See, e.g.*, *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *8 (W.D. Wash. July 2, 2024) (denying certain hotel owner-operator defendants' motions to dismiss the plaintiff's TVPRA claim where the plaintiff alleged that while at the hotel she "would constantly be guarded or escorted by her trafficker or one of his associates who would be assigned to sit outside her room," reasoning that "the control that [plaintiff's] traffickers allegedly showed over her while at the hotel ('constantly' being guarded or escorted by her trafficker or his associates, including sitting outside her room) further supports that hotel staff were on reasonable notice that [plaintiff] was being 'harbored' or 'maintained' in the rooms she was staying and was being 'coerced' into commercial sex"); *B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 6120682, at *6–7 (N.D. Cal. Sept. 18, 2023) (denying certain franchisee and franchisor defendants' motions to dismiss the plaintiff's TVPRA claim where plaintiff alleged that her trafficker worked directly with the manager of the hotel to sell plaintiff for commercial sex, and that after "observing" on hotel security footage an assault on the plaintiff by plaintiff's trafficker, the manager suggested moving the plaintiff to a room next to the manager's so that they would be able to hear when the trafficker or any buyers became violent, and assaulted the plaintiff multiple times while they were on duty); *C. T. v. Red Roof Inns, Inc.*, No. 2:22-CV-834-JES-KCD, 2023 WL 3510879, at *5 (M.D. Fla. Mar. 11, 2023) (granting plaintiff's motion for leave to amend to add a beneficiary claim under the TVPRA over franchisor's opposition where plaintiff's proposed complaint alleged that the hotel staff would have noticed that they and other victims did not leave the room without being escorted by one of their traffickers, that the staff would have observed changes to the plaintiff's appearance, such as

bruising, and hotel cameras would have recorded one of the plaintiff's attempts to escape); *B.D.G. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-3202, 2023 WL 5935646, at *1, 5–7 (S.D. Ohio Sept. 12, 2023) (denying franchisor defendant's motion to dismiss plaintiff's TVPRA claim where plaintiff alleged that defendant had access to internal reports prepared by hotel staff and external police reports about plaintiff's abuse including physical altercations in public places, witnessing multiple "johns" going into plaintiff's hotel room daily, and plaintiff's health deterioration); *Doe (K.B.) v. G6 Hosp., LLC*, No. 1:23-CV-2597-TWT, 2023 WL 8650785, at *8–9 (N.D. Ga. Dec. 14, 2023) (denying franchisee defendant's motion to dismiss plaintiff's TVPRA claim where plaintiff alleged that her trafficker waited outside her motel room, in plain view of the staff and security cameras, plaintiff looked nervous and afraid when interacting with motel staff, and plaintiff had visible injuries from the physical abuse she suffered at the hands of her trafficker); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-CV-645-JES-NPM, 2023 WL 5510268, at *5 (M.D. Fla. Aug. 25, 2023) (denying franchisee defendants' motion to dismiss plaintiff's TVPRA claim where plaintiff alleged "red flags" that supported knowledge of trafficking: payments in cash, large amounts of used condoms and bodily fluids on the sheets and towels, plaintiff's physical appearance, excessive requests for sheets and cleaning services, the personal relationship with staff and plaintiff's trafficker, and the direct employee encounters with plaintiff and her trafficker inside the hotel); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *4–5 (S.D. Ohio Dec. 16, 2022) (denying defendant hotel's motion to dismiss plaintiff's TVPRA claim where plaintiff alleged that at least one of plaintiff's traffickers regularly requested that hotel staff notify him when plaintiff attempted to leave the hotels); *A.W. v. Red Roof Inns, Inc.*, No. 2:21-CV-04934, 2022 WL 17741050, at *1, 6–7 (S.D. Ohio Dec. 16, 2022) (denying defendant's motion to dismiss plaintiff's TVPRA claim where plaintiff alleged visible bruising, extreme weight loss, and public altercations); *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04933, 2022 WL 17363234, at *1, 7–9 (S.D. Ohio Dec. 1, 2022) (denying defendant's motion to dismiss plaintiff's TVPRA claim where plaintiff alleged visible bruising and physical and verbal abuse occurring in public areas of the hotel and in front of the same hotel staff on multiple occasions); *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1297–99 (M.D. Fla. 2021) (denying defendants' motion to dismiss the plaintiff's TVPRA claim where plaintiff alleged that the traffickers escorted her in and around hotel and plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness, and inappropriate attire); *S. Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1082–84 (M.D. Fla. 2021) (denying defendant's motion to dismiss plaintiff's TVPRA claim where plaintiff alleged that she was escorted around the premises by her traffickers, she exhibited signs of poor hygiene, and the trafficking created noise that would be a disturbance to other hotel guests); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 189–90, 192–94 (E.D. Pa. 2020) (denying defendant's motion to dismiss plaintiff's TVPRA claim where plaintiff alleged that staff observed her with signs of visible injury on more than one occasion, frequent loud altercations, and attacks on plaintiff by her trafficker were constant and loud enough for hotel patrons and staff to hear); *A.C. v. Red Roof Inns, Inc.*, No. 2:19-CV-4965, 2020 WL 3256261, at *1, 4–5 (S.D. Ohio June 16, 2020) (denying defendant hotel's motion to dismiss a plaintiff's TVPRA claim where plaintiff alleged that she was "exhibiting signs of malnourishment while inappropriately dressed for travel and being forcibly escorted by the same individuals"); *J.C.*, 2020 WL 6318707, at *4–7 (denying hotel defendants' motions to dismiss plaintiff's TVPRA claims where plaintiff alleged that she displayed a visibly deteriorating appearance and

Here, Plaintiff's Complaint does not allege the overt indicia from which this Court could reasonably infer that Defendant knew or should have known that sex trafficking by means of force, threat of force, fraud, coercion, or a combination thereof was taking place at the Residence Inn.[6] Plaintiff claimed at oral argument that the Amended Complaint included an allegation that she was malnourished, but this allegation does not appear in the Amended Complaint. Plaintiff also claimed that this Court could reasonably infer from the allegations that she was trafficked against her will that she also displayed outward signs of such trafficking and that hotel staff would have observed these signs. But to find so would require this Court to speculate, not reasonably infer. This Court will not introduce new, unalleged facts which were in Plaintiff's control to plead.

Plaintiff's Amended Complaint sufficiently pleads that Defendant was on notice of commercial sex activity taking place at the Residence Inn, but it lacks sufficient facts that

---

prominent bruising all over her body, and she was in the constant presence of her trafficker, as well as specific situations that should have alerted the hotel staff of her situation, including incidents reported to the staff, and witnessed by the staff, where police were never called).

[6] At oral argument, Plaintiff suggested that Defendant's actual or constructive knowledge that Plaintiff had a "pimp" was sufficient to establish actual or constructive knowledge that the venture violated the TVPRA. Under Plaintiff's view, if a third-party is involved in a commercial sex exchange, then that third-party has necessarily used force, threats of force, fraud, coercion, or a combination thereof in causing the individual performing the commercial sex act to do so. This view collapses the distinction between general prostitution, in which a "pimp" may be involved, and commercial sex trafficking in violation of the TVPRA. Plaintiff did not cite, nor could this Court locate, any case supporting this proposition. Along with a lack of authority, Plaintiff's argument falters because it misreads the TVPRA. The TVPRA prohibits causing someone to engage in a commercial sex act by means of force, fraud, or coercion. Plaintiff's view would make the "by means of" clause superfluous. "It is a fundamental principle of statutory interpretation that [courts] must give effect, if possible, to every clause and word of a statute, so that no part will be inoperative or superfluous, void or insignificant." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018) (internal quotation marks and citations omitted). This Court declines to adopt Plaintiff's argument that knowledge of the involvement of a third-party in a commercial sex exchange automatically amounts to actual or constructive knowledge of a violation of the TVPRA.

PAGE 14 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant was on notice that sex trafficking in violation of the TVPRA was taking place. Even as to Residence Inn Employee A, Plaintiff has not alleged sufficient facts from which this Court could reasonably infer that this employee should have known that Plaintiff was engaging in commercial sex acts because the trafficker used means of force, threat of force, fraud, coercion, or a combination thereof. Indeed, Plaintiff alleges that she communicated with Residence Inn Employee A, but she alleges nothing about the contents of their communication, such as Plaintiff requesting help or describing her situation. Likewise for Plaintiff's allegations regarding her and her trafficker's March 19, 2013, arrest at the Residence Inn for promoting prostitution—this arrest put Defendant on notice that general prostitution or commercial sex activity involving these individuals was taking place at the hotel, but not that sex trafficking in violation of the TVPRA was taking place.[7]

\*   \*   \*

To be clear, the factual allegations in the Amended Complaint are sufficient to establish at this stage that Plaintiff was a victim of sex trafficking in violation of the TVPRA at the Residence Inn in 2012 and 2013. Further, the special relationship alleged between the trafficker and Residence Inn Employee A suffices to plead Defendant's participation in a commercial sex venture. But this Court cannot conclude, even viewing the allegations in the light most favorable to Plaintiff, that this special relationship alone put Residence Inn Employee A and Defendant on notice that Plaintiff was subjected to force, threats of force, fraud, coercion, or a combination thereof to cause Plaintiff to engage in commercial sex acts at the Residence Inn, as required

---

[7] This Court notes that, under Oregon law, there is a distinction between promoting prostitution, which prohibits a person from knowingly inducing or causing another person to engage in prostitution, O.R.S. 167.012, and compelling prostitution, which prohibits a person from using force or intimidation to compel another person to engage in prostitution, O.R.S. 167.017.

under the TVPRA. To hold Defendant liable as a beneficiary of that trafficking venture, Plaintiff must also sufficiently plead, or allege facts from which this Court can reasonably infer, that Defendant knew or should have known that the trafficker used force, threats of force, fraud, coercion, or a combination thereof to cause Plaintiff to engage in commercial sex acts at the Residence Inn. As explained above, Plaintiff has not done so.

## C. Dismissal with Leave to Amend

During oral argument, Plaintiff requested she again be granted leave to amend, which Defendant opposed. As noted above, courts have discretion to grant dismissal with leave to amend on a Rule 12(c) motion. *In re Dram Antitrust Litig.*, 516 F. Supp. 2d at 1084; *Crosby v. Wells Fargo Bank, N.A.*, 42 F. Supp. 3d 1343, 1346 (C.D. Cal. 2014).

"Requests for leave to amend should be granted with 'extreme liberality.' When considering whether to grant leave to amend, a district court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citations omitted). "[P]rejudice to the opposing party carries the most weight." *Id.*; *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (It is an "an abuse of discretion where the district court fails to make a determination that the pleading *could not possibly* be cured by the allegation of other facts." (internal quotation marks and citations omitted)).

Here, these factors weigh in favor of granting leave to amend. Plaintiff has had only a single opportunity to amend in this case, which does not amount to a *repeated* failure to cure deficiencies. There is no evidence or allegation that Plaintiff has acted out of bad faith or dilatory motive over the course of these proceedings. Defendant will not be prejudiced by further amendment—Plaintiff does not seek to add new claims or theories, but rather additional facts in

PAGE 16 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

support of her TVPRA claim. Defendant will have a full opportunity to respond to Plaintiff's amended complaint, should she choose to file one. The only factor that counsels against granting leave to amend is Plaintiff's undue delay in seeking to amend, but undue delay alone is not a basis for denying leave to amend. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1155 n.4 (9th Cir. 2016) ("[W]e note that undue delay alone cannot serve as the basis for the denial of leave to amend."); *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend."). Allowing Plaintiff another opportunity to amend is appropriate in this case.

## CONCLUSION

Defendant's Motion for Judgment on the Pleadings, ECF 59, is GRANTED, though this Court exercises its discretion to dismiss without prejudice Plaintiff's TVPRA claim against Defendant rather than grant judgment in Defendant's favor. Plaintiff is given twenty-one (21) days from the issuance of this Opinion and Order to file an amended complaint.

**IT IS SO ORDERED.**

DATED this 22nd day of August, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge