# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **A.B.**, | Case No. 3:23-cv-00388-IM |
| Plaintiff, | **OPINION AND ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| **INTERSTATE MANAGEMENT COMPANY, LLC**, | |
| Defendant. | |

Susanna Southworth, Restore the Child, PLLC, 2522 North Proctor Street, Suite 85, Tacoma, WA 98406. Joel Shapiro, Law Office of Joel Shapiro, LLC, 1420 NW Lovejoy St, Suite 631, Portland, OR 97209. Matthew Schultz, Levin, Papantonio, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A., 316 S. Baylen St., Suite 600, Pensacola, FL 32502. Attorneys for Plaintiff.

Francis Torrence and Meryl Hulteng, Lewis Brisbois Bisgaard & Smith LLP, 888 SW Fifth Avenue, Suite 900, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff A.B. ("Plaintiff") brings a single claim against Defendant Interstate Management

Company, LLC, doing business as Residence Inn Portland Airport ("Residence Inn,"

"Interstate," or "Defendant") alleging a violation of the Trafficking Victims Protection

Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. Second Amended Complaint ("SAC"), ECF 70. Before this Court are cross-motions for summary judgment filed by Plaintiff A.B., ECF 133, and Defendant Interstate, ECF 136. For the reasons set forth below, this Court denies these motions.

## BRIEF FACTUAL BACKGROUND

Plaintiff A.B. alleges that she was trafficked for commercial sex in Oregon through the use of force, fraud, or coercion by her trafficker M.K., beginning in September 2012. A.B. Deposition Tr. 3/14/2025 27:20-28:1, ECF 134-1 ("Tr. 3/14/2025"). A.B. alleges that some of that trafficking occurred at the Residence Inn through March 19, 2013. *Id.* 13:17-23. Throughout this period, the Residence Inn was operated by Defendant Interstate. A.B. asserts that she was trafficked and subject to severe abuse and coercion by M.K. at various Oregon hotels, including the Residence Inn at least three different times. *Id.* 201:15-25.

As discussed in further detail below, A.B. argues that there were obvious signs of trafficking that Defendant should have been aware of, including but not limited to: a do-not-disturb sign was posted outside the hotel rooms M.K. booked for up to three days straight, Tr. 3/14/2025 118:23-24; A.B. would avoid eye contact with any guests or people who worked at the hotel, *id.* 189:10-13; there was audible "violence going on in that hotel room", *id.* 189:16-17; multiple people came in and out of the hotel room, *id.* 189:17-18; she appeared malnourished, *id.* 189:11-15; M.K. would "sit[] in the lobby with his laptop . . . or sit[] in his car right out in front of the hotel" and use "hotel wifi to post Backpage ads," *id.* 189:18-24; and A.B. further testified that when she "was in the hotel roaming around, going to the lobby, going back up to the room 7 to 10 more times in a day" she "was wearing booty shorts and a strappy tank top," *id.* 224:7-10, ECF 134-1., *see id.* 224:6-19. M.K. also used a Residence Inn employee's discount code to rent

rooms at the Residence Inn at a reduced rate. L.J. Deposition Tr. 3/24/2025 74:11-21, ECF 134-13; Portland Police Bureau Investigation Report, ECF 134-2 at 4.

## BRIEF PROCEDURAL HISTORY

On March 16, 2023, A.B. filed her initial complaint, bringing one claim under the TVPRA against Defendants Shilo Inn, Salem LLC ("Shilo LLC") and Summit Hotel TRS 085 LLC ("Summit"). Compl., ECF 1. Shilo LLC answered the complaint. Answer, ECF 9. This Court granted Summit's motion to dismiss in August 2023 and dismissed A.B.'s complaint with leave to amend. Opinion & Order, ECF 30. In September 2023, A.B. filed the first amended complaint, bringing one claim under the TVPRA against Shilo LLC, Shilo Management Corporation ("Shilo Corp."), and Defendant Interstate. First Amended Complaint, ECF 36. Interstate answered the first amended complaint. Answer, ECF 49. Shilo LLC and Shilo Corp. moved to dismiss the first amended complaint against them, and this Court granted their motion. Opinion & Order, ECF 50. Since January 2024, Interstate has been the sole remaining Defendant in this case.

In April 2024, Interstate moved for judgment on the pleadings. Motion for Judgment on the Pleadings, ECF 59. This Court granted the motion in August 2024 and dismissed the first amended complaint with leave to amend. Opinion & Order, ECF 69. A.B. filed the second amended complaint in September 2024, alleging one TVPRA claim against Interstate that included additional allegations to support the claim. SAC, ECF 70. Interstate moved to dismiss, and this Court denied the motion in December 2024. Opinion & Order, ECF 79. In that opinion, this Court held that Plaintiff's allegations were timely, that Plaintiff sufficiently pleaded that Defendant participated in a commercial sex venture involving Plaintiff, and that Plaintiff sufficiently pleaded that Defendant knew or should have known that the venture involved the use

of force, threat of force, fraud, coercion, or a combination thereof to cause Plaintiff to engage in commercial sex acts. *Id.* at 2.

In August 2025, the parties filed cross-motions for summary judgment on the sole remaining claim in this case. Plaintiff's Motion for Summary Judgment ("Plaintiff MSJ"), ECF 133; Defendant's Motion for Summary Judgment ("Defendant MSJ"), ECF 136. On November 17, 2025, this Court requested supplemental briefing from both parties to address issues relating to the application of the TVPRA's statute of limitations. ECF 183.

## LEGAL STANDARDS

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (citing Fed. R. Civ. P. 56(a)). When, as here, both parties move for summary judgment, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (citation omitted).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324). A party must be able to support the facts it puts forth with evidence that would be admissible at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

## DISCUSSION

Plaintiff brings a single claim under Section 1595(a) of the TVPRA alleging that Defendant "breached [its] duty" to not "benefit from a venture which they knew, or should have known, to engage in violations of 18 U.S.C. § 1591(a)." SAC, ECF 70 ¶ 122. Plaintiff further alleges Defendant knowingly benefitted from "facilitating human trafficking through their participation in the harboring of Plaintiff, her trafficker, and buyers at the Residence Inn Portland for the purposes of commercial sex induced by force, the threat of force, fraud, or coercion." SAC ¶¶ 122–23.

The TVPRA provides a civil remedy to victims of human trafficking. *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011). Section 1591 of the TVPRA defines sex trafficking pertaining to adults as commercial sex activity where "force, threats of force, fraud, coercion . . ., or any combination of such means [is] used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2); *see A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1024 (D. Or. 2021). In outlining the private right of civil action for victims, section 1595 states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). "As to adults, the statute targets commercial sex activity that is forced or coerced; it does not address commercial sex activity generally." *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (citing 18 U.S.C. § 1591(a)), *aff'd*, 21 F.4th 714 (11th Cir. 2021). "[B]oth § 1591 and § 1595 contain expansive language that the courts should interpret broadly." *Id.*

Under the TVPRA, a plaintiff may bring either (a) a direct civil claim against the perpetrator of her trafficking or (b) a civil "beneficiary" claim against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a); *see A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020) ("Section 1595 opened the door for liability against facilitators who did not directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture." (citation modified)).

To claim sex trafficking through venture or beneficiary liability under Sections 1591(a) and 1595(a), Plaintiff must prove that Defendant "(1) knowingly benefitted financially or by receiving anything of value; (2) from participation in a venture; (3) they knew or should have known has engaged in sex trafficking." *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020) (citation modified) (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d at 181 (E.D. Pa. 2020)); *see Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. at 1024 (holding that a Defendant must have "(1) knowingly benefited, financially or by receiving anything of value from (2) participation in a venture they knew or should have known has engaged in sex trafficking as defined by § 1591" (citation modified) (quoting 18 U.S.C. § 1595(a))).

A.B. alleges Defendant is liable under 18 U.S.C. § 1595 for knowingly benefitting from facilitating a venture it knew or should have known engaged in sex trafficking in violation of § 1591(a). SAC ¶¶ 120–24. Plaintiff asserts that she is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring this civil suit under § 1595. SAC ¶ 121.

Defendant's Motion for Summary Judgment includes two motions. First, Defendant argues that it is entitled to summary judgment because (1) there is no evidence Defendant participated in a trafficking venture and (2) there is no evidence Defendant knew or should have known that A.B. "was engaged in commercial sex at Defendant's hotel, much less the alleged trafficking." Defendant MSJ, ECF 136 at 2, 9, 13. Second, Defendant moves for partial summary judgment on any portion of Plaintiff's claim that depends on violations of the TVPRA before March 16, 2013 as time-barred. *Id.* Plaintiff alleged that she was trafficked at the Residence Inn from February 28 to March 2, 2013, March 11 to March 12, 2013, and March 19 to March 21, 2013. SAC ¶ 30. Defendants therefore seek to narrow the relevant dates to the third stay, March 19, 2013.

Plaintiff opposes both motions and files her own cross-motion, arguing that she is entitled to judgment as a matter of law because there are no material issues of fact as to Plaintiff's TVPRA beneficiary liability claim. Plaintiff's Response to Defendant MSJ, ECF 146 at 4; Plaintiff MSJ, ECF 133. Specifically, Plaintiff argues that there are no material issues of fact because the record establishes that (1) Plaintiff is a victim of sex trafficking, (2) Defendant knowingly benefited from its participation in a venture, (3) Defendant participated in a venture that violated the TVPRA as to Plaintiff, (4) Defendant knew or should have known that it was participating in a venture that was in violation of the TVPRA, and (5) Plaintiff suffered injuries as a result of sex trafficking. Plaintiff MSJ, ECF 133 at 8–22. In her Response to Defendant's motion, Plaintiff argues that she has, at minimum, shown that there are material issues of fact in dispute as to each of the TVPRA elements. Plaintiff's Response to Defendant MSJ, ECF 146 at 17.

Plaintiff also argues that her claims are timely under the continuing tort doctrine or the discovery rule doctrine. Plaintiff's Response to Defendant MSJ, ECF 146 at 25–30. After reviewing the motions and the evidence submitted by both parties in support of their respective motions, all three motions are denied.

This Court first addresses Defendant's motion that Plaintiff's claims under the TVPRA predating March 16, 2013 are time-barred. Then, this Court addresses Defendant's motion that it is entitled to summary judgment because (i) there is no evidence Defendant participated in a trafficking venture and (ii) that there is no evidence Defendant knew or should have known that A.B. was engaged in commercial sex at Defendant's hotel. Finally, this Court addresses Plaintiff's cross-motion that she is entitled to summary judgment because there are no material issues of fact as to Plaintiff's TVPRA beneficiary liability claim.

## A.  Statute of Limitations of TVPRA Claims

Defendant is not entitled to summary judgment on Plaintiff's claims for incidents that occurred prior to March 16, 2013, because when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that "the accrual of her claims was delayed" until 2016, and therefore, these claims are timely under the TVPRA's ten-year statute of limitations. *St. Clair v. County of Okanogan*, 154 F.4th 1154, 1159–60 (9th Cir. 2025). "A limitations period begins to run when the claim accrues." *Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019). In the Ninth Circuit, "'accrual occurs when the plaintiff has a complete and present cause of action,' that is, when the plaintiff 'knows or has reason to know of the actual injury.'" *Id.* (first quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007); and then quoting *Scheer v. Kelly*, 817 F.3d 1183, 1188 (9th Cir. 2016)). More precisely, a claim accrues "when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'"

PAGE 8 – OPINION & ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

*Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1050 (9th Cir. 2008) (citation modified)).

A court's determination of the "accrual date" is a question of law "unless the choice of that date turns in part on what a reasonable person knew or should have known," in which case it "is a mixed question of law and fact." *Erlin v. United States*, 364 F.3d 1127, 1130 (9th Cir. 2004); *see Bibeau v. Pac. Nw. Rsch. Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) ("What a plaintiff knew and when she knew it are questions of fact." (quoting *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986)) (citation modified)). As the Ninth Circuit has recognized, "the question of when a claim accrues can often be a fact-intensive inquiry." *G & G Prods.*, 902 F.3d 940, 953 (9th Cir. 2018); *see Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012) (noting that "a district court's factual finding concerning when a claim accrues is entitled to deferential review" (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 691 (9th Cir. 2005)). Therefore, "[w]here there are disputed questions of fact or facts susceptible to opposing inferences as to when the statute of limitations . . . commenced, summary judgment is not appropriate." *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991).

Here, this Court finds that Defendant has not demonstrated that Plaintiff's claims based on incidents before March 16, 2013, are untimely as a matter of law. *See Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) ("A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred."). The Ninth Circuit's recent decision in *St. Clair v. County of Okanogan*, 154 F.4th 1154, 1159–60 (9th Cir. 2025), is instructive. *St. Clair* "highlight[ed] the importance of careful application of the statute of limitations in sexual assault cases," reversing the district court's dismissal of Plaintiff St. Clair's claims under 42 U.S.C. § 1983 and state law. 154 F.4th at 1156. St. Clair "allege[d] she

was coerced into sexual encounters" by a sheriff's deputy "in exchange for his turning a blind eye to her illegal activity." *Id.* As relevant here, the Ninth Circuit "conclude[d] that because individuals who suffer such harm may not become aware of or understand the causes of their injuries until years later, St. Clair has alleged a plausible theory of delayed accrual of her injuries." *Id.*

Specifically, the Ninth Circuit rejected the district court's conclusion that St. Clair's claims accrued "at the time of the first [sexual] encounter in 2014" when she "was made aware that her relationship with Defendant Holloway was in exchange for her criminal activity remaining uncharged and unpursued." *Id.* at 1160. The Ninth Circuit explained that this faulty reasoning resulted in "the erroneous conclusion that the [three-year] statute of limitations ran out by 2017, before St. Clair first filed her complaint in 2023." *Id.* Instead, the Court found that "St. Clair plausibly alleges sufficient facts that the accrual of her claims was delayed" because "she neither knew nor reasonably should have known of her injuries until after September 2020." *Id.*

To reach this conclusion, the Ninth Circuit cited St. Clair's allegations that she was "[s]truggling with addiction, fearful of criminal liability, and coerced by Holloway into sexual acts." *Id.* The Court relied on "the power imbalance between a law enforcement officer and a vulnerable victim of sexual assault," which "may result in a delayed realization of the underlying harm." *Id.* The Ninth Circuit further reasoned that "[e]ven if . . . St. Clair was aware of the power imbalance from the start of Holloway's conduct, there is ample daylight between that awareness and awareness that such authority is being wielded inappropriately." *Id.* And the Court also found support in circuit precedent that held that "a mental health counselor's coaxing of a patient into sexual relations can give rise to delayed accrual of a claim because the patient's dependence

on her counselor and her shame prevented her from realizing the extent to which he was at fault for her injuries." *Id.* (citing *Simmons v. United States*, 805 F.2d 1363, 1367–68 (9th Cir. 1986)).

Likewise, in this case, a reasonable jury could conclude that Plaintiff's "dependence on her [trafficker] and her shame prevented her from realizing" her injuries due to trafficking until after March 16, 2013. *Id.* In other words, there are "facts susceptible to opposing inferences as to when" Plaintiff first had actual or constructive knowledge of her injuries due to trafficking. *Echevarria*, 947 F.2d at 1397. In particular, a reasonable jury could find that it was not until 2016, "when she was referred to a mental health therapist trained in sex trafficking and trauma bonding, that A.B. became aware of the psychological injuries she had suffered in connection with being trafficked." Plaintiff's Response to Defendant MSJ, ECF 146 at 29. As an initial matter, there is certainly a genuine dispute of material fact whether "[t]hrough manipulation, fraud, blackmail, threats, and force by her trafficker, A.B. was coerced to engage in commercial sex activity for his financial gain." *Id.* at 11; *see* A.B. Deposition Tr. 3/14/2025 44:14-24, 69:3-70:9, ECF 134-1 (Plaintiff testifying that M.K. "would throw me against the wall, . . . throw me onto the bed . . . and choke me" and that M.K. saved "hundreds of hours of [video] recordings" of her sexual acts to "blackmail and to make sure that I couldn't keep any money for myself" and "that if I ever tried to leave him he would make sure that my employers and my family or any potential future boyfriends would see that").

Next, Plaintiff cites evidence from several other witnesses that establishes that due to this coercion, Plaintiff "did not understand the nature of the harm until long after the sexual encounters." *St. Clair*, 154 F.4th at 1159. Plaintiff's hotel security expert determined that based on the responding police officer's testimony, Plaintiff "had been groomed and psychologically conditioned, which is why she did not immediately recognize herself as a trafficking victim."

PAGE 11 – OPINION & ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Southworth Decl., Ex. 6, ECF 147-6 at 13. That police officer, "who took the lead with anti-trafficking and commercial sex training on site at hotels," *id.* at 12, specifically testified that facts discovered after March 2013 revealed the "extent that [M.K.] had control over her." Southworth Decl., Ex. 4, ECF 147-4 at 108–09. Another officer similarly testified that "after meeting numerous women in this line of work who have pimps[,] the manipulation and the other things . . . . cause them to make decisions that . . . a rational person who is not in that [situation] . . . can't understand." Officer Christensen Deposition Tr. 7/30/2025 36:4-9, ECF 147-5. This officer also testified that based on his observations, it takes "sometimes a lot of therapy and a lot of help" before victims "realiz[e] that, yes," they were trafficked. *Id.* 36:12-15. Plaintiff's expert witness, a clinical psychologist and psychotherapist, testified that "[w]hen there is a bond that's based on a traumatic relationship, an individual . . . often doesn't even think that they're being victimized." A. Judge Deposition Tr. 6/19/2025 30:20-31:2, ECF 147-9. The expert further explained that "for example, victims or survivors of trafficking, their understanding when I first meet them might be very different than . . . years later, as their life proceeds and maybe if they're involved in treatment." *Id.* 31:6-11.

All this to say that under the discovery rule, there are "facts susceptible to opposing inferences as to when" Plaintiff first had actual or constructive knowledge of her injuries due to trafficking prior to March 16, 2013. *Echevarria*, 947 F.2d at 1397. Importantly, *St. Clair* relied on "the power imbalance between a law enforcement officer and a vulnerable victim of sexual assault." 154 F.4th at 1160. Based on the above evidence viewed in the light most favorable to Plaintiff of (1) the coercive power imbalance between M.K. and Plaintiff and (2) victims of trafficking not recognizing that they are being trafficked in the moment, a jury could reasonably

find that Plaintiff did not possess either actual or constructive knowledge of her injuries from trafficking until 2016.

Defendant's argument that Plaintiff's failure to "understand whether her injuries fit cleanly into a TVPRA claim does not toll the statute of limitations," Defendant's Reply to MSJ, ECF 150 at 21, is unavailing. Instead, Plaintiff provides sufficient evidence for a reasonable jury to conclude that she did "not become aware of or understand the causes of [her] injuries until years later." *St. Clair*, 154 F.4th at 1156; *see Simmons*, 805 F.2d at 1367 ("It was not knowledge of his *legal* fault that she gained in 1983, but knowledge of the *fact* that his mishandling of her [counseling] had caused her psychological damage." (emphasis added)).

Indeed, *St. Clair* was not written on a blank slate, and the Ninth Circuit cited its prior holding in *Simmons* that "a mental health counselor's coaxing of a patient into sexual relations can give rise to delayed accrual of a claim because the patient's dependence on her counselor and her shame prevented her from realizing the extent to which [the counselor] was at fault for her injuries." *St. Clair*, 154 F.4th at 1160; *see Simmons*, 805 F.2d at 1366–67 (upholding the district court's determination after a bench trial that plaintiff Simmons's claims accrued when her psychiatrist diagnosed her "post-traumatic stress syndrome" from "the emotional and psychological damage she suffered," years after the sexual encounters with her former counselor). Likewise, here there is a genuine dispute of material fact for a jury to resolve when Plaintiff first "knew or should have known" of her injuries. *Erlin*, 364 F.3d at 1130; *see Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1113–14 (9th Cir. 2003) ("What-did-[s]he-know-and-when-did-[s]he-know-it-questions are often difficult to answer, and for that reason are often inappropriate for resolution on summary judgment.").

Defendant raises two arguments for why this Court should nonetheless conclude as a matter of law that Plaintiff first "knew or should have known" of her injuries from alleged trafficking incidents that occurred prior to March 16, 2013, on the specific days of her sexual encounters. *Erlin*, 364 F.3d at 1130. None of these arguments are persuasive, especially in light of the general background principle that "precisely what the plaintiff knew and when she knew it are questions of fact better left for a jury." *St. Clair*, 154 F.4th at 1160 (citation modified).

*First*, Defendant cannot distinguish *St. Clair* on the ground that the claims there applied a statute of limitations under state law, whereas the TVPRA claims alleged here have a statute of limitations under federal law. Because "claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits," *Shimazu*, 940 F.3d at 461, there was no dispute in *St. Clair* that the applicable statute of limitations was Washington state's three-year statute of limitations for claims arising from "injury to the person," Wash. Rev. Code Ann. § 4.16.080(2); *St. Clair*, 154 F.4th at 1158. Likewise, here there is no dispute that the TVPRA's ten-year statute of limitations under 18 U.S.C. § 1595(c)(1) applies to Plaintiff's claims.

Rather, the dispute in each case is when the claims *accrued*, and "federal law governs when a claim accrues." *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.")). And "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (citation modified). This test applies regardless of whether the operative statute of limitations originates in state law, as in *St. Clair*, or in federal law, as here. Therefore, *St. Clair*'s holding on the accrual of a Section 1983 provides governing *federal law* on accrual of the TVPRA claims in this case. *Simmons* itself involved claims under the Federal Tort Claims Act

("FTCA"), which like claims under the TVPRA, are subject to a federal statute of limitations. 805 F.2d at 1366 ("A tort claim against the United States must be filed within two years." (citing 28 U.S.C. § 2401(b) (1982))). *Simmons* applied the same test to uphold the district court's determination that the FTCA claims did not accrue until Simmons's psychiatrist identified "the emotional and psychological damage she suffered" from her sexual relationship with her former counselor. 805 F.2d at 1367. As *St. Clair* stated, citing *Simmons*, "[t]he same holds true here." *St. Clair*, 154 F.4th at 1160. And for the reasons discussed above, the same is true here.

*Second*, Defendant is incorrect that the statutory text of the TVPRA dictates that a claim brought under the TVPRA accrues when a violation of the statute occurs. Defendant is correct that as is always the case for any statutory provision, "[w]hen interpreting limitations provisions," courts "'begin by analyzing the statutory language.'" *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). But in *Rotkiske*, the Supreme Court addressed a federal statute of limitations under the Fair Debt Collection Practices Act ("FDCPA"), which provided that "an FDCPA action 'may be brought . . . within one year from the date on which the violation occurs.'" *Id.* (ellipses in original) (quoting 15 U.S.C. § 1692k(d)). Of course, if the TVPRA contained this language, then this Court would agree that the "language unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Id.* But that is not what the TVPRA's statute of limitations contains.

Rather, the TVPRA provides in relevant part that "[n]o action may be maintained . . . unless it is commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). The Supreme Court rejected Defendant's broad reading of "arose" to mean something akin to "the date on which the violation occurs" in *TRW Inc. v. Andrews*, 534 U.S. 19

(2001). At issue in *TRW Inc.* was the accrual of "the two-year statute of limitations governing

suits based on the Fair Credit Reporting Act" ("FCRA"). *Id.* at 22 (citing 15 U.S.C. § 1681p

(2001)). Like the TVPRA's statute of limitations, the FCRA's statute of limitations at the time

permitted actions brought "within two years from the date on which the liability *arises*." 15

U.S.C. § 1681p (2001) (emphasis added). The Supreme Court held that "the text and structure of

§ 1681p evince Congress' intent to preclude judicial implication of a discovery rule." *TRW Inc.*,

534 U.S. at 28.[1] But as relevant here, the Supreme Court found that "[t]he dictionary definition

of the word 'arise' . . . can be used to support either party's position" whether the discovery rule

applies. *Id.* at 32 (citing dictionary definitions). In the Supreme Court's view, "the phrase

'liability arises' is not particularly instructive, much less dispositive of this case." *Id.* The same

logic applies to the TVPRA's parallel phrase "cause of action arose." 18 U.S.C. § 1595(c)(1).

Therefore, since "there are two plausible constructions of [the TVPRA's] statute of

limitations"—with respect to whether it incorporates a discovery rule—this Court must "adopt

the construction that starts the time limit running when the cause of action accrues because

Congress legislates against the standard rule that the limitations period commences when the

plaintiff has a complete and present cause of action." *Rotkiske*, 589 U.S. at 13 (citation

modified). And once again, in the Ninth Circuit, "the plaintiff has a complete and present cause

of action . . . when the plaintiff knows or has reason to know of the injury which is the basis of

---

[1] Specifically, in 15 U.S.C. § 1681p, "Congress implicitly excluded a general discovery rule by explicitly including a more limited one." *TRW Inc.*, 534 U.S. at 28. While the general statute of limitations was "within two years from the date on which the liability arises" there was an exception for where the defendant materially and willfully misrepresented material information in which "the action may be brought at any time within two years *after discovery* by the individual of the misrepresentation." *Id.* (emphasis added) (quoting 15 U.S.C. § 1681p). There is no "limited" discovery rule in 18 U.S.C. § 1595(c).

the action." *Soto*, 882 F.3d at 870 (citation modified). In sum, there is no textual basis to override the presumption in the Ninth Circuit that "all federal statutes of limitations, regardless of context, incorporate a general discovery rule unless Congress has expressly legislated otherwise." *TRW Inc.*, 534 U.S. at 27 (citation modified).

In short, Defendant's argument boils down to the following declaration for which Defendant provides no legal support: "It was not until 2016, when Plaintiff was referred to a mental health therapist trained in sex trafficking and trauma bonding, that A.B. became aware of the psychological injuries she had suffered in connection with being trafficked. This is not enough." Defendant's Reply to MSJ, ECF 150 at 21; *see* Defendant's Supp. Br. To MSJ, ECF 191 at 8 (similar). But under *St. Clair* and *Simmons*, a reasonable jury could find that this *is* enough to conclude that Plaintiff first "knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury" in 2016. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (citation modified).[2] Accordingly, this question is properly left to the jury at trial.

## B. Defendant's Participation and Constructive Knowledge

As stated above, there are three elements to a beneficiary claim under § 1595(a) of the TVPRA, that Defendant "(1) knowingly benefitted financially or by receiving anything of value; (2) from participation in a venture; (3) they knew or should have known has engaged in sex

---

[2] This Court previously found at the motion to dismiss stage that "the continuing tort doctrine," i.e. the continuing violations doctrine, "may apply, making all of Plaintiff's allegations of trafficking timely." Opinion & Order, ECF 79 at 7. Because this Court finds at this stage that there is a triable issue regarding whether these claims are timely under the discovery rule, this Court need not reach whether the continuing tort doctrine may apply to Plaintiff's TVPRA claims based on incidents that occurred prior to March 16, 2013.

trafficking." *J.C.*, 2020 WL 6318707, at *4 (citation modified) (quoting *Marriott Int'l, Inc.*, 455 F. Supp. 3d at 181).

Defendant does not dispute the first element.[3] Defendant argues Plaintiff's TVPRA claim must fail as a matter of law because Plaintiff cannot allege facts from which this Court can reasonably infer that Defendant's conduct meets the second and third elements. Defendant argues "there is no evidence Defendant participated in a trafficking venture," Defendant MSJ, ECF 136 at 9–13 (citation modified), and "there is no evidence Defendant knew or should have known" about the alleged trafficking, *id.* at 13–15 (citation modified).

### 1. Defendant's Participation

The second element of a beneficiary claim under § 1595(a) requires that Plaintiff show Defendant's "participation in a venture." "Plaintiff is not required to allege that Defendants . . . performed an overt act in furtherance of the venture to satisfy the 'participation' element of a civil TVPRA claim." *Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d at 1025.

"Congress has not defined the phrase ["participation in a venture"] under Section 1595." *M.A. v. Wyndham Hotels &, Resorts, Inc.,* No. 2:19-cv-00849, 2025 WL 2696500, at *13 (S.D. Ohio Sept. 22, 2025). "[T]he phrase 'participation in a venture' requires that [a plaintiff] [demonstrate] that [a defendant] took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). This Court has previously held that to satisfy the "participation" element of a civil TVPRA claim,

---

[3] As explained in this Court's Opinion and Order granting Defendant's motion for judgment on the pleadings, ECF 69, as to Plaintiff's prior complaint, ECF 36, Defendant cannot successfully dispute the first element because Defendant benefitted from Plaintiff's alleged trafficking each time M.K. paid for a room. Opinion & Order, ECF 69 at 8 n.3 (citations omitted).

Plaintiff need not allege that Defendant had actual knowledge of a venture engaged in trafficking by "force, threats of force, fraud, [or] coercion" or that Defendant performed an overt act in furtherance of the venture. Opinion and Order, ECF 69 at 9 (quoting *Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. at 1024–25). The Seventh Circuit has held that "[w]here the [defendant] provides assistance, support, or facilitation to the trafficker through such a 'continuous business relationship,' a court or jury may infer that the [defendant] and trafficker have a 'tacit agreement' that is sufficient for 'participation' under [§] 1595." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023) (citations omitted).

There is a material fact in dispute as to whether Defendant's employee participated in the venture. A housekeeper employed at the Residence Inn (also referred to in the record as "Employee A," "Liana J.," "L.J.," and "L.A.") gave M.K. her employee discount code to book rooms at the Residence Inn. L.J. Deposition Tr. 3/24/2025 55:15-21, ECF 134-13; Hulteng Decl., Ex. B, ECF 137-2 at 4, 17–18. M.K. paid approximately $48 for the room with the employee's discount, which was normally $175 per room. Hulteng Decl., Ex. B, ECF 137-2 at 4. L.J. printed the discount form for M.K. in the housekeeping office at the Residence Inn. L.J. Deposition Tr. 3/24/2025 56:3-7, ECF 134-13. L.J. told the hotel employee at the front desk the morning of one of M.K.'s stays that she had reserved a room for a friend under her name and to change it to M.K.'s name. *Id.* 71:23-72:1. L.J. testified that M.K. gave her money, $40, because of the discount code she gave him. *Id.* 77:13-15. After M.K. paid and thanked L.J., M.K. asked L.J. if she could help him book a room in Arizona using her employee discount again; L.J. then wrote her employee discount code on a piece of paper and gave it to M.K. Hulteng Decl., Ex. B, ECF 137-2 at 18.

There is evidence in the record that L.J. and M.K. knew one another. L.J.'s then-fiancé and M.K. had known one another since childhood. L.J. Deposition Tr. 3/24/2025 59:23-25, ECF 134-13. A.B. told law enforcement that M.K. was friends with L.J.'s fiancé. Hulteng Decl., Ex. B, ECF 137-2 at 17. L.J. stated that her fiancé's brother and M.K. were party promoters and would advertise each other's events. L.J. Deposition Tr. 3/24/2025 61:6-18, ECF 134-13. L.J. and M.K. were friends on Facebook. *Id.* 58:10-11. L.J. told M.K. that she worked at the Residence Inn and could get M.K. a discounted room. *Id.* 62:16-25. L.J. admitted that she helped M.K. reserve rooms for him and A.B. but did not admit to knowledge of any trafficking. *Id.* 66:6-67:13. L.J. and M.K. messaged on Facebook, *id.* 66:6-12, and A.B. and L.J. messaged about M.K., *id.* 78:18-79:16. While L.J. did say that "she did not really know [M.K.] that well and that over the years they had passed by each other at various parties" when being questioned by the police shortly after M.K.'s arrest, Hulteng Decl., Ex. B, ECF 137-2 at 17, the reservation document for M.K.'s March 19, 2013 booking has a note that says "Liana family, no form needed." L.J. Deposition Tr. 3/24/2025 85:12-20, ECF 134-13. In the reservation document for M.K.'s March 11, 2013 booking, there is a note that says "[L.] in HK Family." *Id.* 84:16-19; *see also id.* 56:3-11 (L.J. printed the discount form for M.K.). Defendant received payments whenever M.K. booked a room at the Residence Inn, but the "tacit agreement" from a "continuous business relationship" goes further than that in this case. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)

The use of a discount code allowed M.K. to profit more from each night spent at the Residence Inn, and there is evidence that L.J. received money in return and then gave M.K. her code to book discounted rooms in other states. Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that Defendant's employee's involvement is

sufficient to show "assistance, support, or facilitation" to M.K., *G.G.*, 76 F.4th at 559. This

element does not require Plaintiff to present evidence of the exact contours of L.J.'s and M.K.'s

relationship, and to require such would contravene that "both § 1591 and § 1595 contain

expansive language that the courts should interpret broadly." *Wyndham Hotels & Resorts, Inc.*,

532 F. Supp. 3d at 1024. Ultimately, the factfinder will need to weigh the evidence of L.J.'s

relationship to M.K. and assess witness credibility accordingly.

Defendant places considerable emphasis on a single sentence in a police report from the

night of March 19, 2013. PPB Officer Christensen spoke with A.B. after M.K.'s arrest that night.

Hulteng Decl., Ex. B, ECF 137-2 at 2–5. Christensen's report stated that "[A.B.] said that [M.K.]

paid for the hotel room and put it under his name and that they were able to get a discount by

using the employee code from a housekeeper at the hotel." *Id.* at 4. Then, of note, "*[A.B.] said

she was an acquaintance but that [L.J.] did not know what they were using the room for.*" *Id.*

(emphasis added). In her deposition in March 2025, A.B. stated that she had no knowledge about

the relationship between L.J. and M.K. Hulteng Decl., ECF 145, Ex. A, Tr. 3/14/2025 84:17-25.

A.B. later stated in her deposition that she was afraid of being caught by the police. A.B.

Deposition Tr. 3/14/2025 108:23-25, ECF 134-1. In its motion for summary judgment,

Defendant characterizes that one sentence in the police report as "A.B. stated unequivocally that

the employee alleged to have participated did not know what the room was being used for."

Defendant MSJ, ECF 136 at 12. This is misleading. At most, A.B., who was speaking to the

police shortly after M.K.'s arrest, Hulteng Decl., Ex. B, ECF 137-2 at 2–5, conveyed her

understanding of what she thought another person knew. L.J.'s knowledge and whether she was

"tacitly participating in an enterprise involving commercial sex," Opinion & Order, ECF 69 at

10–11; *see M.A.*, 425 F. Supp. 3d at 970, considering all circumstances and evidence in the case, is a matter for a jury to decide.[4]

### 2. Defendant's Constructive Knowledge

The last element is that Defendant "had actual and/or constructive knowledge about *[a plaintiff's]* sex trafficking." *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 6318707, at *6 (N.D. Cal. Oct. 28, 2020) (emphasis in original). In this context, "[c]onstructive knowledge has been defined as 'that knowledge which one using reasonable care or diligence should have.'" *Doe v. MG Freesites*, 707 F. Supp. 3d 1157, 1178 (N.D. Ala. 2023) (citation modified). It is insufficient that "a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property," but rather, knowledge "of a venture involving sex trafficking by force, threat of force, fraud, or coercion, or a combination thereof" is required. Opinion & Order, ECF 69 at 11. However, "the plain text of § 1595(a) makes clear that the standard under this section *is a negligence standard* of constructive knowledge, not actual knowledge." *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261, at *4 (S.D. Ohio June 16, 2020) (emphasis added) (citing *M.A.*, 425 F. Supp. 3d at 965; *H.H. v. G6 Hosp., LLC*, No. 2:19-cv-755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019)).

Defendant argues that "there has been no evidence obtained in discovery to support A.B.'s allegations that Defendant knew or should have known that she was engaged in

---

[4] When deciding Defendant's motion for judgment on the pleadings, this Court held that a combination of five of Plaintiff's allegations in the first amended complaint, "[t]aken together," allowed L.J.'s conduct to satisfy the participation element. Opinion & Order, ECF 69 at 10. As detailed above with citations, *supra*, each of those five allegations this Court previously relied on is now supported by evidence from discovery: that is, L.J. (1) allowed M.K. to use her discount code; (2) received money in exchange for allowing M.K. to use the discount code; (3) chose to replace her name on the reservation with M.K.'s name; (4) communicated online with both M.K. and Plaintiff; and (5) had a fiancé that was friends with M.K.

commercial sex at the hotel, much less the alleged trafficking." Defendant's MSJ, ECF 136 at 13. Defendant's argument is unpersuasive because viewed in the light most favorable to the non-movant, Plaintiff has come forth with facts that demonstrate Defendant's constructive knowledge of M.K.'s venture involving sex trafficking of A.B.

Plaintiff points to various indicia of sex trafficking that Plaintiff argues support finding that Defendant had constructive knowledge of M.K.'s venture at the Residence Inn. A.B. testified that she engaged in commercial sex with seven to ten men at the hotel per day, which produced heavy foot traffic outside the hotel room and lobby. A.B. Deposition Tr. 3/14/2025 189:17-190:2, 224:7-10, ECF 134-1. A.B. also testified that there were sometimes two to three men waiting for her in the lobby. *Id.* 106:21-24. A.B. testified that hotel employees saw her walk men 30 to 50 years older than her up to her room, for example. *Id.* 190:2-4. A.B. would ask hotel employees for towels one to two times a day, every day. *Id.* 190:19-20. A do-not-disturb sign was also left on the door for the duration of every three-day stay at the hotel. *Id.* 118:16-24. M.K. also used in laptop in the lobby on hotel wifi to post explicit Backpage ads of A.B. *Id.* 189:18-24. Those facts support finding that Defendant had constructive knowledge of commercial sex occurring at the hotel. But on their own, those facts are not sufficient to find constructive knowledge of a venture involving sex trafficking "by force, threat of force, fraud, or coercion, or a combination thereof." Opinion & Order, ECF 69 at 11. However, Plaintiff points to other specific indicia of trafficking by force or coercion.

There are several disputes of material fact concerning specific indicia of sex trafficking by force or coercion. First, there is a material dispute of fact as to whether A.B. looked malnourished or otherwise ill in public areas of the hotel. Defendant argues that "there is no evidence to support that A.B. appeared malnourished. Rather, A.B.'s mother, father, sister,

friend, and the officers all testified in deposition that A.B. did not appear malnourished or emaciated." Defendant MSJ, ECF 136 at 14 (citations omitted). However, there is evidence that M.K. controlled what A.B. wore and how she otherwise looked and "decided whether [A.B.] could interact with [her] family." A.B. Deposition Tr. 3/14/2025 16:20-23, ECF 134-1. A.B. testified that when she was "working," she "was only allowed to eat 500 calories a day." *Id.* 113:6-8. A.B. testified that she avoided eye contact with guests and employees and appeared malnourished and anxious. *Id.* 189:11-15. Plaintiff also points to the specifics of A.B.'s sister (M.B.)'s deposition. M.B. said that while A.B. did not appear completely emaciated, A.B. was "steadily looking thinner and thinner." M.B. Deposition Tr. 3/28/2025 57:11-20, ECF 147-17. Parsing M.B.'s testimony about Plaintiff "steadily looking thinner and thinner" will be up to the jury to decide, but on the summary judgment record, there is enough that a reasonable jury *could* find A.B. looked malnourished or ill. This Court finds there is a genuine factual dispute as to how A.B. visibly appeared to hotel employees at the Residence Inn.

There is a material dispute of fact as to whether there were loud noises when A.B. stayed at the Residence Inn. A.B. testified that M.K. was physically violent with her "almost every occasion" when they went out to hotels, A.B. Deposition Tr. 3/14/2025 200:4-25, ECF 134-1, and thought that Residence Inn hotel staff "likely probably heard violence going on in that hotel room," *id.* 189:16-17. Defendant argues "there is no evidence that loud noises ever occurred on the premises at the Residence Inn Portland Airport." Defendant MSJ, ECF 136 at 14. However, A.B. testified about at least one specific instance of loud noises from the hotel room. Around dinnertime on March 19, 2023, M.K. yelled at her and threw her up against the wall. A.B. Deposition, Tr. 3/14/2025 129:6-25, ECF 134-1. Ultimately, a jury will have to decide if this is credible, but there are competing versions of what hotel staff likely heard based on the record.

PAGE 24 – OPINION & ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Moreover, there is a material dispute of fact as to whether A.B. was dressed inappropriately in public spaces of the hotel. Defendant argues that "there is no evidence to support that A.B. was observed by hotel staff in any inappropriate attire." Defendant MSJ, ECF 136 at 14. Defendant points to a part of A.B.'s deposition where at most, A.B. implies that she did sometimes wear appropriate attire. *See id.* at 14–15. A jury could give weight to what Defendant raises; however, A.B. further testified that when she "was in the hotel roaming around, going to the lobby, going back up to the room 7 to 10 more times in a day" she "was wearing booty shorts and a strappy tank top." A.B. Deposition Tr. 3/14/2025 224:7-10, ECF 134-1. These indicia, taken together, are enough for Plaintiff's claim to survive summary judgment. Weighing the evidence relevant to these material factual disputes remains the function of the factfinder at trial.

## C. Plaintiff's Motion for Summary Judgment

Plaintiff argues that she is entitled to summary judgment because there are no material issues of fact as to Plaintiff's TVPRA beneficiary liability claim. Plaintiff MSJ, ECF 133 at 8–22. However, for the reasons discussed above, there are material disputes of fact that prevent this Court from resolving whether Defendant participated in and had constructive knowledge of the venture at summary judgment. For that reason, Plaintiff is not entitled to summary judgment.

## CONCLUSION

Plaintiff's Motion for Summary Judgment, ECF 133, is DENIED. Defendant's Motion for Summary Judgment, ECF 136, is DENIED in full.

**IT IS SO ORDERED.**

DATED this 21st day of November, 2025.

PAGE 25 – OPINION & ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge